UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AMANDA M. GIBBS,

            Plaintiff,

          v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,

           Defendant.

No.: 4:14-CV-5058-EFS

**ORDER GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION AND
DENYING PLAINTIFF'S SUMMARY-
JUDGMENT MOTION**

     Before the Court, without oral argument, are two cross-summary-judgment motions. Plaintiff Amanda Gibbs appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 19. Ms. Gibbs contends the ALJ erred because she 1) failed to fully accept the opinions of Ms. Gibbs' treating and examining health care providers, 2) improperly rejected Ms. Gibbs' subjective complaints and Mr. Gibbs' lay-witness statements, and 3) failed to include all of Ms. Gibbs' limitations resulting from her fibromyalgia and anxiety into the hypothetical question posed to the vocational expert and therefore the identified jobs are not consistent with Ms. Gibbs' functional limitations. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision that Ms. Gibbs is capable of performing substantial gainful activity in a field for which a significant number of jobs exist in the national economy. After reviewing the record and relevant authority the Court is fully

ORDER - 1

informed.   For the reasons set forth below, the Court affirms the ALJ's decision and therefore denies Ms. Gibbs' motion and grants the Commissioner's motion.

**A.    Statement of Facts[1]**

Ms. Gibbs is a 35-year-old, mother of three children, who has a high-school education. In the past, she worked as a prep cook, office manager, automobile title clerk, and bar waitress. In October 2009, Ms. Gibbs sought treatment from Robert Whitson, D.O. for panic attacks, which she had experienced for the previous three months. Dr. Whitson diagnosed Ms. Gibbs as suffering from post-traumatic stress disorder (PTSD). Ms. Gibbs continued to be treated by Dr. Whitson through 2012, during which time, Dr. Whitson also diagnosed her as suffering from stress, tension headaches, agoraphobia, and fibromyalgia. In regard to the fibromyalgia diagnosis, Dr. Whitson noted, without an articulated explanation, that Ms. Gibbs had 18 out of the 18 fibromyalgia trigger points in July 2010 and April 2011.

On December 22, 2010, Farrukh Hasmi, M.D., evaluated Ms. Gibbs and diagnosed her as suffering from generalized anxiety disorder and social phobia. Three months later, Ms. Gibbs was evaluated by Joan Davis, M.D., who diagnosed Ms. Gibbs as experiencing panic disorder with agoraphobia and major depressive disorder. Dr. Jones noted that Ms. Gibbs, in her then-current condition, would experience difficulty in maintaining

---

[1]   The facts are only briefly summarized.   Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and underlying records.

ORDER - 2

attendance in the workplace, secondary to her panic disorder with agoraphobia, and difficulty dealing with usual workplace stressors, and also commented that a higher dose of medication may help treat Ms. Gibbs' anxiety and that she could perform simple, repetitive tasks and could interact with supervisors, coworkers, and the public.

About a year later in January 2012, Matthew Peterson, M.D. evaluated Ms. Gibbs and reported that her pain was getting progressively worse. He found her pain was aggravated with extension and lateral flexion/bilateral rotation. In April 2012, he noted she had tender spots in the spine, shoulders, upper and mid posterior neck, both subclavical areas, lateral elbows, both TM joints, feet, and toes.

On May 7, 2012, Dr. Whitson completed a physical medical source statement for Ms. Gibbs. Dr. Whitson found Ms. Gibbs 1) was limited to 2 hours sitting, ½ hour standing, and ¾ hour walking at one time; 2) could lift up to 5 pounds frequently and up to 20 pounds occasionally; 3) could never crawl, climb, twist torso, or twist her neck; 4) could seldom maintain a flexed neck position or forward bent position, or work with hands outstretched; and 5) could reach only occasionally.

In the summer and fall of 2012, Ms. Gibbs was evaluated by Dr. John Groner on three occasions. Dr. Groner noted that Ms. Gibbs had tenderness in the upper and lower extremities, clavicles, and shoulders, and that Ms. Gibbs reported her pain was getting worse. Dr. Groner administered an epidural steroid injection in September 2012.[2]

---

[2] It was later recommended that Ms. Gibbs receive a second steroid injection; the record does not indicate whether she received the second injection.

ORDER - 3

In June 2012, Wing C. Chau, M.D., diagnosed Ms. Gibbs with fibromyalgia and psychiatric disorders. Dr. Chau completed a medical source statement, finding Ms. Gibbs was limited to sitting, standing, and walking for one hour at a time, she could frequently reach, handle, and feel, she could occasionally pull, stoop, and kneel, and she could never crouch or crawl. In September 2012, Ed Anderson, MSPT, completed a functional capacity evaluation, in which he found Ms. Gibbs was limited to sedentary work up to four hours a day and that she needed accommodations to change positions to minimize aggravation of back symptoms.

**B.    Procedural History**

Ms. Gibbs applied for disability insurance benefits on January 3, 2011, alleging an onset day of July 6, 2009. Benefits were denied initially and also upon reconsideration. Ms. Gibbs requested a hearing, and in May 2012, a hearing was held before an ALJ. The ALJ ordered a post-hearing physical consultative evaluation—Dr. Chau's evaluation. A second hearing was held before the ALJ on December 6, 2012; Ms. Gibbs testified at the hearing. Ms. Gibbs testified that her anxiety caused her not to want to leave the house or drive a car, sitting makes her uncomfortable, she is tired due to lack of continuous sleep, she suffers migraines at least 15 days out of the month, and her fibromyalgia causes pain in her entire back, neck, shoulders, and hips.

In a written decision, the ALJ determined that Ms. Gibbs suffered the following severe impairments: fibromyalgia, anxiety, and agoraphobia. The ALJ determined that due to these severe impairments that Ms. Gibbs could not perform her past relevant work, but found that other jobs were available and that Ms. Gibbs could perform these jobs notwithstanding her

ORDER - 4

severe impairments. Therefore, the ALJ denied Ms. Gibbs' benefits. Ms. Gibbs' request for review with the Appeals Council was denied.

Ms. Gibbs filed this lawsuit, appealing the ALJ's decision. Thereafter, the parties filed the instant summary-judgment motions.

**C.    Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the

ORDER - 5

impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work she has performed in the past. This includes determining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if she establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D.    Standard of Review**

On review, the court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**E.    Analysis**

The Court takes each of Ms. Gibbs' challenges to the ALJ's decision in turn.

ORDER - 7

1.   **Ms. Gibbs' Credibility**

Ms. Gibbs argues the ALJ failed to specifically identify 1) what testimony of Ms. Gibbs he found incredible regarding the severity of her symptoms, and 2) what evidence the ALJ relied on to reject Ms. Gibbs' subjective complaints.

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of the pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of her symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's symptom-severity testimony. *Id.* (recognizing that the clear-and-convincing standard is a demanding standard).

In pertinent part, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

ORDER - 8

ECF No. 15 at 24. Thereafter, for the next four pages, the ALJ summarizes the medical records and compares them to Ms. Gibbs' assessments regarding the severity of her pain, ultimately concluding, "the claimant has not presented objective medical evidence that would support physical or psychological limitation greater than that accounted for in the claimant's residual functional capacity assessment." ECF No. 15 at 28.  The Court finds the ALJ's analysis sets forth specific, clear, and convincing reasons for rejecting Ms. Gibbs' symptom-severity testimony, including that Ms. Gibbs' calm presentation at appointments was inconsistent with her reports of the limitations imposed by her pain and anxiety, that Ms. Gibbs failed to react in pain to Dr. Chau's palpation over the typical fibromyalgia points during his consultative examination, and that Ms. Gibbs failed to pursue recommended treatment options such as counseling. The ALJ's analysis comports with Social Security Ruling 12-2p, which acknowledges that fibromyalgia is a complex medical condition for which there is often no objective test to support a diagnosis, but then proceeds to find, based on substantial evidence in the medical records, that Ms. Gibbs' impairments did not limit her to the extent she claimed.

>    **2.    Brenton Gibbs**

>    Ms. Gibbs contends the ALJ failed to explain why she rejected Brenton Gibbs' lay statements regarding Ms. Gibb's panic attacks and anxiety while driving and in the public. In his 2011 Function Report regarding Ms. Gibbs, Mr. Gibbs acknowledged that his wife got the two older kids ready for school and cared for the youngest child at home, she cleaned the house, did laundry, made dinner—tasks which took her a couple of hours a day, manages the household finances, watches television or reads for three

to four hours a day, and that on at least two occasions she has gotten

sick when traveling within the community due to her anxiety.

In regard to Mr. Gibbs, the ALJ wrote:

> The undersigned has also considered the 3rd-party Function
> Report from the claimant's husband, Brenton Gibbs (Exhibit 5E),
> but finds that it merely recites the claimant's allegations of
> limitation. As the undersigned has found that these allegations
> lack credibility to the extent they are inconsistent with the
> residual functional capacity outlined above, any recitation of
> those allegations likewise lacks credibility.

ECF No. 15 at 29. The Court finds no error in the ALJ's acceptance of Mr.

Gibbs' observations and reports that were consistent with the determined

residual functional capacity, and rejection of those that were

inconsistent determined residual functional capacity. *See Bayliss v.

Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (requiring an ALJ to "only

give germane reasons for discrediting the testimony of lay witnesses" and

that "[i]nconsistency with medical evidence is one such reason"); *Molina

v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ properly compared

Mr. Gibbs' comments regarding Ms. Gibbs' anxiety and panic attacks while

driving and outside the home, to Ms. Gibbs' calm appearance and mannerisms

while at her medical appointments, as reflected in the medical records.

### 3. Treating Opinions

Ms. Gibbs contends the ALJ improperly rejected the opinions of Dr.

Whitson, Dr. Davis, and Mr. Anderson in regard to the severity of her

impairments and the impact they have on her ability to work.

In regard to Dr. Whitson, Ms. Gibbs highlights that he noted that

Ms. Gibbs was limited to sedentary work and had many postural limitations

due to fibromyalgia and, therefore, the ALJ erred in finding that the

record did not contain diagnostic evidence identifying a disease that

ORDER – 10

explained Ms. Gibbs' debilitating symptoms. Upon review of Dr. Whitson's records and the ALJ's decision, the Court finds the ALJ sufficiently explained why she concluded that Dr. Whitson's physical-limitation conclusions were based on Ms. Gibbs' subjective statements rather than objective evidence. The ALJ properly discounted Dr. Whitson's opinion regarding the severity and functional effects of Ms. Gibbs' fibromyalgia because the ALJ found Ms. Gibbs incredible as to the severity of her impairments, and this decision was based on substantial evidence in the medical records. The ALJ also recognized that Dr. Whitson failed to provide any "supporting objective diagnostic evidence identifying a disease process to explain or support the claimant's alleged debilitating symptoms" and "there is little in the way of narrative explanation . . . of the claimant's symptomology." ECF No. 15 at 28. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (affirming the ALJ's rejection of the examining physician's opinion, which was based merely on the claimant's subjective complaints—complaints that were appropriately discounted by the ALJ).

Ms. Gibbs also argues the ALJ improperly rejected Dr. Davis' opinions that Ms. Gibbs would have difficulty maintaining attendance in the workplace due to her panic disorder with agoraphobia and coping with usual workplace stressors. After reviewing the record, the Court finds no error in the ALJ's decision in this regard. Dr. Davis concluded that Ms. Gibbs in her "current condition" would experience "difficulty maintaining attendance in the workplace secondary to her panic disorder with agoraphobia" and "difficulty dealing with usual workplace stressors," but Dr. Davis also noted that Ms. Gibbs' "depressive disorder could be

successfully treated if she was treated with a different medication and that Ms. Gibbs "could interact with supervisors as well as coworkers and members of the public." ECF No. 15 at 279; *see Turner v. Comm'r of Social Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that an individual's difficulties do not always equate to a residual function limitation). In sum, the ALJ fully considered Dr. Davis' findings, and the ALJ's final determination is consistent with Dr. Davis' findings.

Ms. Gibbs also contends the ALJ improperly rejected Mr. Anderson's opinion that Ms. Gibbs was not limited to sedentary work up to four hours a day; the Commissioner agrees that because Mr. Anderson was an "other source" of medical information that the ALJ improperly failed to consider his information. The ALJ's determination that Mr. Anderson, who is a physical therapist, was not an acceptable medical source was erroneous as physical therapists are "other sources." 20 C.F.R. § 404.1513(d); Social Security Ruling 06-03p. However, this error was harmless. The ALJ's determination that Ms. Gibbs' subjective reports of the severity of her impairments was incredible, impacts Mr. Anderson's functional assessment, which was based on Ms. Gibbs' own report of the extent that her fibromyalgia caused her pain and affected her everyday activities.

**4.    Step Five**

Finally, Ms. Gibbs submits the ALJ failed to include all of Ms. Gibbs' limitations as recognized and determined by Dr. Chau, Dr. Whitson, and Dr. Davis in the hypothetical posed to the vocational expert. As explained above, the Court concludes the ALJ fully considered each of the medical personnel's observations and opinions and appropriately

discredited those that were supported merely by Ms. Gibbs' personal account of the severity of her symptoms.

In addition, Ms. Gibbs posits that the ALJ erred because the jobs identified by the vocational expert are not consistent with the ALJ's hypothetical and/or Dictionary of Occupational Titles. In the hypothetical provided to the vocational expert, the ALJ did not identify a specific exertion level, instead identifying specific limitations, including sitting for up to two hours at a time for six hours total, standing for up to two hours at a time for two hours total, walking for ¾ hour at a time for up to ¾ hour total, and the ability to use upper and lower extremities for pushing and pulling, including the operation of hand and foot controls. The vocational expert concluded that Ms. Gibbs could perform "sedentary and light work, where there would be an allowance for a sit/stand option." ECF No. 15 at 79. With the identified allowance for the sit/stand option, the Court finds the three light, unskilled jobs identified by the vocational expert are consistent with the hypothetical and the residual functional capacity and are not inconsistent with the Dictionary of Occupational Titles.

**E.    Conclusion**

The ALJ applied the correct legal standards and there is substantial evidence in the record to support the ALJ's decision. For the above-given reasons, **IT IS HEREBY ORDERED**:

1.    Ms. Gibbs' Motion for Summary Judgment, **ECF No. 19**, is **DENIED.**

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED.**

3.    **JUDGMENT** is to be entered in the Commissioner's favor.

ORDER – 13

4.    The case shall be **CLOSED.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to counsel.

**DATED** this 19th day of October 2015.

                        s/Edward F. Shea
                        _____
                        EDWARD F. SHEA
                    Senior United States District Judge

Q:\EFS\Civil\2014\5058.social.sec.lc1.docx

ORDER - 14